THE PRINCETON MANUFACTURING COMPANY *vs.* WHITE.

1. While sections 1918 and 3154 of the Code prescribe the mode of distribution of the assets of an insolvent firm when done by the law itself, they do not limit the power of a debtor to give legal preference to one creditor over another, not reserving any interest for his own benefit, or that of any other favored creditor, conferred by section 1953.
2. A voluntary assignment by a debtor in New York, for the benefit of creditors, not repugnant to the laws of this state, carried the title to a debt due such assignor in Georgia.
(*a*.) Such an assignment violates no law or policy of this state, and a creditor who served garnishment upon the Georgia debtor subsequently to the assignment could not hold the fund.

Debtor and Creditor. Assignments. Title. Garnishment. Before Judge ERWIN. Clarke Superior Court. May Term, 1881.

Reported in the decision.

R. B. RUSSELL, for plaintiff in error.

L. & H. COBB, for defendants.

CRAWFORD, Justice.

Moore, Jenkins & Co., of the state of New York, on the 17th day of September, 1880, made an assignment of all their property, individual and partnership, for the payment of their debts. The assignee, also of the state of New York, accepted the trust. The Princeton Manufacturing Company, of this state, being a creditor, to the end that it might recover its debt, on the 18th day of October, 1880, sued out attachment and served garnishment on James White, who admitted assets in hand to the amount of $500.00, but set out the assignment and notice thereof before service was perfected upon him.

On the answer, counsel for the company moved the

court for a judgment against the garnishee, which motion was overruled, and the court ordered that the garnishment be dissolved.

This ruling is the error complained of.

1. The single question thus presented by this case is, whether a voluntary assignment, made in New York, of all the individual and partnership property of a firm, carries with it such assets as are in this state at the time of the assignment, to the exclusion of a subsequent attaching creditor.

The property of a non-resident debtor in this state is subject to seizure and sale ; if, therefore, the deed of assignment had not passed the right to this fund out of Moore, Jenkins & Co., it was liable to a judgment of that court for the payment of this debt.

Subject to some exceptions, a voluntary assignment in one state, valid by the laws of that state, operates to convey personal property, not under lien, in every state where it may be found. One of the exceptions is, when the assignment is repugnant to the laws of the state where the property is found.

It was contended by counsel for the plaintiff in error, that this assignment was invalid by the laws of New York, and that the provision for the payment of the individual assets to individual creditors only, was contrary to the express law and policy of this state.

On the first point, it is a sufficient reply to say that the untraversed answer of the garnishee states that the assignment had been made in the state of New York, and that it passed the title to all the property and assets of Moore, Jenkins & Co. to the assignee, and, in verification of his answer, he filed an authenticated copy of said assignment.

On the second point, the only question is whether section 1953 of the Code is limited by sections 1918 and 3154.

By section 1953, it is provided that a debtor may give legal preference to one creditor over another, so that he

makes no reservation for his own benefit, or other favored creditors.

By section 1918 it is declared that where one of the partners of an insolvent partnership dies, who is himself insolvent, the creditors of the partnership cannot claim to share the individual assets of the deceased partner until the individual creditors have received an equal per centage from the individual assets that the partnership creditors have received from the partnership assets.

Section 3154 provides, that when joint assets are exhausted, joint debts may come on individual assets, but individual debts must first be advanced the *pro rata* amount received on the joint debts.

We cannot appreciate the force of this objection, for, as we view it, these sections direct the mode and manner of distributing the assets of insolvent partnerships when done by the law itself.

But when the right of legal preference is exercised by the debtor, under section 1953 of the Code, that necessarily precludes the distribution under the other sections. Besides, the policy of the law is just the same under either statute, and either may be adopted. It may just as well be said that the policy of the law is against making wills because a rule is provided for the distribution of estates where no will is made.

2. But the question most strongly urged before us was, that our citizens would be compelled to go abroad to seek dividends, when our courts have the means of satisfying them under their own control. This goes to the very foundation of the whole case, and must be ruled upon.

Whatever may have been the rulings in the past, relative to the general operations of bankrupt or involuntary assignments, which is the source of the decisions relied upon by counsel for the plaintiff in error, it is now settled in most of the states that all voluntary assignments, if valid where made, and not repugnant to the *lex rei sitæ*, will be enforced.

Even in Massachusetts, where very strong doctrine, adverse to this principle, was laid down in the case of Ingraham *vs.* Geyser, 13 Mass., 146, and cited by plaintiff in error, it has been reviewed in Blake *vs.* Williams, 6 Pick., 286, and the supreme court say : " We do not think that it was intended to go to the extent of deciding that in all circumstances an attaching creditor should prevail over the assignee of the debtor under a transfer made abroad. It was certainly not intended to decide that a *bona fide* transfer by a debtor abroad to his creditors, or to trustees for their use, *in such form as would be valid to pass the property if made within this state*, would be set aside for the benefit of creditors who had acquired no lien until after the making of such assignment." Also, in a later case the same views were more strongly maintained. Means *vs.* Hapgood, 19 Pick., 105.

In the case of Caskie *vs.* Webster, 2 Wallace, 131, where Ingraham *vs.* Geyser was cited, Justice Grier says: "A debt has no *situs*, and follows the person of the creditor. A voluntary assignment of it by the creditor, which is valid by the law of his domicile, will operate as a transfer of the debt which should be regarded in all places. In America, bankrupt or involuntary assignments, by operation of law, have not been considered as subject to this rule. But I know of no other established exception to the general rule, that a transfer of personal property, valid by the law of the owner's domicile, is valid everywhere." To the same purport are the following authorities: Burrell on Assignments, 368 to 372 ; Story on Conflict of Laws, §§396, 398, 399, 400, 400(a) and 404.

The same doctrine was followed to a sufficient extent to cover this case by our own supreme court, in the cases *Mason & Fant vs. Striker & Co. et al.*, 37 *Ga.*, 262, and *Miller vs. Kernaghan*, 56 *Ga.*, 155.

Judgment affirmed.