### BIRDSEYE, assignee, *vs.* UNDERHILL.

1. An assignment legal in the State of New York where it was executed, and not intended to have effect in this State, is admissible in evidence in the courts of this State to show title of the assignee to debts due the assignors by persons residing in this State, though there are attached thereto no schedule of assets and list of creditors, as required to render valid assignments executed in Georgia.

(a) The *situs* of a debt follows the creditor, and where the debtor and creditor reside in different States, the law of the domicile of the creditor prevails.

2. Whenever the contract itself violates the policy of our law, it is void and cannot be enforced in the courts of this State; but the acts of the legislature requiring schedules to be annexed to deeds of assignment, do not make those schedules a part of the contract; nor do these acts apply to contracts or assignments made out of this State. *Miller vs. Kernaghan,* 56 *Ga.* 155; *Princeton Manufacturing Company vs. White,* 68 *Ga.* 96; *Herschfeld vs. Dexel & Company,* 12 *Ga.* 582; *Stricker & Company vs. Tinkham,* 35 *Ga.* 176; and *Mason & Fant vs. Stricker & Company,* 37 *Ga.* 262, distinguished.

November 5, 1888.

Foreign assignment. Choses in action. *Situs.* Contracts. Public policy. Before Judge MARSHALL J. CLARKE. Fulton superior court. September term, 1888.

Reported in the decision.

HOKE & BURTON SMITH, for plaintiff in error.

CALHOUN, KING & SPALDING, *contra.*

SIMMONS, Justice.

It appears from the record in this case that Baker & Clark, merchants doing business in the State of New York, on the 24th of November, 1886, made an assignment to C. F. Birdseye, of "all and singular their co-partnership and individual estate and property, real and personal, of every kind whatsoever, and wherever situated, held by and in the name of said parties, . . . except such property as exempt by law from levy and sale." In this deed of assignment, preferences were made of certain creditors. On the 7th of November, 1886, Stephen Underhill, a non-resident of Georgia, instituted his action in this State, against said non-resident assignors, by attachment and garnishment; and summons of garnishment was served upon several of their debtors residing in this State. The garnishees answered admitting their indebtedness. Birdseye, the

assignee, appeared in court and claimed the assets as belonging to him as assignee. The case was submitted to the trial judge without the intervention of a jury, upon the following agreed statement of facts :

"(1) This paper shall be construed as a properly made claim by C. F. Birdseye, assignee, for all assets garnished; (2) the debts of plaintiffs are due and correct ; (3) plaintiff (Underhill) resides outside of the State of Georgia; (4) the firm of Baker & Clark, both of whom reside out of Georgia, executed an assignment to C. F. Birdseye, on November 24th, 1886, a copy of which is hereto attached. The assignment was a general assignment executed in New York, and was a legal assignment under the laws of New York. There was no schedule of assets attached to the assignment as provided for in section 1953(d), (e), of the code, nor of creditors as provided for in acts 1884–5. The assignment covered, amongst other property elsewhere, choses in action in Georgia; and this claim of Birdseye, assignee, only applies to choses in action in Georgia, the attachment not having been levied upon anything else ; (5) there is no agreement as to whether notice of the assignment was served on the garnishee before the garnishments were served, and each side reserves the right to suspend the case at any time and have evidence taken on this point."

On this statement of facts, the trial judge decided that Birdseye, the assignee, was not entitled to the fund in court, and rendered a judgment in favor of Underhill against Baker & Clark for the amount they were indebted to Underhill, and a judgment against Birdseye, the assignee, for the costs. To this ruling the assignee excepted, and brought the case here for review.

1. The main question before us in this case was, whether this assignment, made in the State of New York, was void under the laws of Georgia. It was insisted by counsel for the defendant in error that it was void under our law, because the assignors did not attach thereto a properly sworn to " full and complete inventory and schedule of all the assets of every kind, held, claimed or owned by said firm at the time of the execution of the assignment," and also a " full and complete inventory and schedule of all indebtedness of every kind

of said firm at the time of the execution of the assign-
ment, and the names of, the amounts due to, and the
residence of each creditor of said assignors," properly
sworn to, as required by the acts of 1881 and 1885. It
was insisted that for this reason the assignment was
void, being in violation of the policy of our law. It
was admitted that under the laws of New York, it was
a legal assignment.

Section 8 of our code declares, that "the validity,
form and effect of all writings or contracts are deter-
mined by the laws of the place where executed. When
such writing or contract is intended to have effect in
this State, it must be executed in conformity to the laws
of this State, excepting wills of personalty of persons
domiciled in another State or country." Here, then, is
an assignment or contract which it is agreed was a valid
and legal contract under the laws of the State of New
York; and under this section of the code, its validity,
form and effect are to be determined by the laws of that
State. It is claimed that this assignment or contract
was intended to have effect in this State, because it was
introduced in the court below as evidence, and under it
this fund was claimed; and that therefore, it must have
been executed in accordance with the laws of this State,
which require a schedule of assets and of indebtedness to
be attached to the assignment as part of the execution
thereof. We can see nothing in this assignment that
shows that it was intended to have effect in this State.
It appears from the face of it that it was an assignment
in the State of New York, and not intended to have
effect in this State alone, but to have effect generally
wherever the assignors had property. We do not think
that the latter part of section 8, *supra*, applies to con-
tracts of this sort. We think that that part of the sec-
tion means that if this contract had been made in New

York, to be performed in this State, then it must be executed in accordance with the laws of this State. But as we have seen, the contract was intended only to have effect in the State of New York. It may be said, however, that Baker & Clark, the assignors, had debts due them by citizens of this State and those debts were assigned in this instrument, and to that extent it was intended to have effect in this State. We do not think that this is a sound proposition. The debt owed them by the garnishees in this State, had no *situs* in this State. The rule is, that the *situs* of a debt follows the creditor, and where the debtor and creditor reside in different States, the law of the domicile of the creditor prevails A debt is not a *corpus* capable of local position, but purely a *jus incorporale*. Story Confl. of Laws, 8 ed. 559. "A chose in action cannot surely be said to have any actual *situs* in the place where the debtor resides. As a general principle, it is payable at the residence of the creditor if not expressed or otherwise, and a tender, to be good, must be made to the creditor." Burrill on Assignments, 471. The *situs* of the debt being at the domicile of the creditor, the creditor had a right to transfer it to his assignee for the benefit of his creditors. Story on Confl. of Laws, 558, says: "The reasoning of Lord Kenyon in a celebrated case (Hunter *vs.* Potts, 4 T. R. 182, 192) would certainly lead to the conclusion that an assignment of personal property, whether it were of goods or debts, according to the law of the owner's domicile, would pass the title in whatever country it might be, unless there were some prohibitory law in that country."

2. But it is said that the assignment, not having attached thereto the schedules of assets and of indebtedness as required by our law, contravenes the policy of our law, and is therefore void. That is true if these

schedules are a part of the contract. Our law is, that whenever the contract itself violates the policy of our law, it is void and cannot be enforced in the courts of this State. We are referred to the following cases to show that this assigment is void : *Herschfeld vs. Dexel & Co.,* 12 *Ga.* 582 ; *Stricker & Co. vs. Tinkham,* 35 *Ga.* 176; *Mason & Fant vs. Stricker & Co.,* 37 *Ga.* 262 ; *Miller vs. Kernaghan,* 56 *Ga.* 155 ; *Princeton Mfg. Co. vs. White,* 68 *Ga.* 96. We have. carefully read the cases referred to, and such of them as are in point establish the principle we have just laid down ; that is, that if the *contract* itself contravenes the policy of our law, it will be void in this State. In the cases in 12 *Ga.,* 35 *Ga.* and 37 *Ga., supra,* the assignments gave a preference to one creditor over another, which at that time made them void, under our law ; and the property, in each of those cases, was situated in this State. We do think that the acts of the legislature requiring schedules to be annexed to the deed of·assignment, make these schedules a part of the contract ; nor do we think that these acts apply to contracts or assignments made out of this State. An inspection of the acts relied on will show that it was not the intention of the legislature that they should affect contracts or assignments other than those made in this State. While it is in the power of the legislature to enact laws declaring that all assignments made out of this State and not executed in conformity with our law, shall be void as to property found here, we do not think it has done so. We think these requirements concerning schedules were made for the protection of the creditors of the assignors, and were intended to prevent fraud on the part of the assignors, by throwing greater restrictions around assignments and compelling the assignors to give a correct statement under oath to their creditors of all their assets and of all their indebt-

edness, and of the persons to whom they were indebted and where those persons reside. We therefore do not think that the schedules are parts of the contract; and as we have seen, it is only when the *contract element* violates the policy of our law, that the assignment is void. We are strengthened in this view by the following decisions made in other States, upon questions somewhat similar to the one now under discussion:

In case of Sanderson *vs.* Bradford, 10 N. H. 260, it was ruled that although the oath of the assignor, made in Massachusetts and sufficient in that State, would have been insufficient in New Hampshire and would have rendered the assignment void if made in New Hampshire, yet the assignment being valid in Massachusetts, the assignment would be held to be valid in New Hampshire. In Vermont the statute required an inventory of all the property assigned to be attached to the assignment; an assignment was made in New York without this inventory; and it was held that a New York assignment without this inventory would be valid, and that the statute of Vermont, requiring the inventory to be attached to the assignment, did not apply to assignments made out of that State. Hanford *vs.* Paine *et al.*, 32 Vt. 448. See the able and learned opinion of Chief Justice Redfield in that case. See also Atwood *vs.* Protection Ins. Co., 14 Conn. 555. In Ockerman *vs.* Cross, 54 N. Y. 29, the court held that the statute law of New York regulating assignments for the benefit of creditors did not apply to foreign assignments, and that such assignments, if valid by the law of the place where made, although not in conformity to the law of New York, would protect the property assigned from attachment. The same principle was held in the case of Beverly *vs.* Whitmore, 19 N. J. Eq. 462; also in the case of Chaffee *vs.* Fourth National

Bank, 71 Maine, 514. *In re* Paige & Sexsmith Lumber Co., 31 Minnesota, 136, it was held that "the statute which declares void assignments not made to residents of this State, and such as are not filed as prescribed, was intended to apply only to assignments made within this State. It does not change the unwritten law relative to the validity of foreign assignments." In the case of Weider *vs.* Maddox, 66 Tex. 372, it was held that if a voluntary assignment covering property in more than one State is deemed valid, it would be sufficient under the law of the domicile of the assignor, and under the law of the State where the property is situated, to pass title, notwithstanding local laws regulating the administration of the trust property be not complied with.

It therefore appearing that this was a legal and valid assignment in the State of New York, where it was made, and that it was not intended to take effect in this State, that no part of the contract of assignment contravenes the policy of our law, and that the assignor had no property in this State, and the requirement of our statute as to schedules being no part of the contract, it follows that the judgment of the trial judge was erroneous and must be reversed.